JAMES M. KIDDER *v.* SELECTMEN OF STEWARTSTOWN.

Under the act of August, 19, 1864, chapter 4032, section 7, cities and towns are not authorized to pay more than three hundred dollars bounty to any person who had already enlisted into the military, naval or marine service of the United States.

And a vote of a town to pay a larger sum would not justify the selectmen in paying it.

THE case sufficiently appears in the opinion of the court.

*Ray & Ladd* for petitioner.

*Fletcher & Haywood*, for petitionees.

BELLOWS, J.    This is a petition for a mandamus to the selectmen of Stewartstown, requiring them to procure and pay to the petitioner the sum of one hundred and fifty dollars voted him by the town as additional bounty for military service.    The substance of the petition is that on the 30th day of March, 1865, the petitioner was, and for several years had been, an inhabitant of said Stewartstown and was duly enrolled as liable to be drafted into the military service of the United States; that on that day he enlisted, and was mustered into that service on the quota of Stewartstown for three years, and was placed to their credit; that he remained in that service until August, 1865, when he was honorably discharged; that at the time of his enlistment he received of said town only the sum of $300—that being all the agents of said town were then authorized to pay; that other recruits who enlisted for said town on the same quota as that upon which the plaintiff was reckoned, actually received from said town a bounty of $450 each; that, on returning home after being mustered out of service, and learning these facts, he claimed that the town in equity and good conscience ought to pay him an additional sum of $150 to make his bounty equal to that of other recruits; and that, accordingly, at a legal town meeting of said town, duly called and holden on March 12th, 1867, for that purpose, the town voted to pay the plaintiff the sum of $150 as additional bounty; that the plaintiff requested the selectmen of said town chosen at said meeting to pay said claim of $150, but they have ever refused and still refuse to do so; therefore the petitioner prays for a writ of mandamus commanding the selectmen to procure and pay over said sum.

An amendment further alleges that the selectmen, from said March 12, 1867, to the present time, have had in their hands of money belonging to said town a large sum, at least $500, subject to their order, and out of which they might, and ought to have paid said sum of $150.

The answer of the defendants does not controvert the allegations in the petition, but contends, among other things, that the vote of the town was a gratuity which cannot be enforced against it, and which the selectmen cannot be required to carry into effect.

In deciding this case it is a material question whether the town was authorized by law to pass such a vote as is set out in the petition, and this depends upon the construction to be given to section seven of the law of August 19, 1864, chap. 4023.

By that section, towns and cities are empowered to raise money and pay bounties in three distinct cases :

1st.    To all persons, except those enlisted in or from insurgent States, who shall be mustered into the military, naval, or marine service of the United States, or shall have been mustered into said service since the President's call of March 14, 1864, and prior to the passage of this act, to fill the quota of such town or city, the bounty not to exceed $300 for each three years' man, and in that proportion for any other term of service.

2d.    To pay a sum not exceeding $200 to each man drafted for one year and mustered into the service as part of the quota of such town or city.

3d. To pay such sum as any town or city may deem expedient as bounty to any person who may for three months preceding have been an inhabitant of such town or city, enlisting on the quota of such town or city, and actually mustered into such service.

It is upon this last provision that the plaintiff relies for authority to pass the vote of March 12, 1867, to pay him the sum he now claims; and the question . is whether by the force of the term *enlisting* there are included in that provision enlistments prior to the passage of the act, or the vote of the town.

Upon a careful consideration of the terms used, we are constrained to consider this provision as applicable only to subsequent enlistments. These terms, it is true, are not very explicit, but the construction we are disposed to give them, is confirmed by the general scope and objects of the act, which very clearly was, what its title indicates, " an act to facilitate the raising of troops."

By the act, provision is made for recruiting in the insurgent States both by State and town agents, and for the payment of bounties for recruits there; also for the payment of bounties generally by the State and by towns and cities; and provision also is made for calling town meetings for purposes contemplated by the act, on the short notice of five days, *if holden within twenty days of the passing of the act;* and looking at its various provisions we think it is manifest that the leading object and design of the act was to facilitate the raising of troops by encouraging enlistments and inducing drafted men to enter the service.

If, then, the terms of the provision in question are held to be vague or ambiguous, it is a well settled rule of interpretation that the general object and design of the act may be considered in aid of construction; and in determining such object and design the title of the act may be considered.

It is often said, however, that the title is no part of the act; and strictly speaking this is true, although with us the title is as much the act of the Legislature as the preamble, or the body of the law itself; whereas in England the title of a bill is the act of the clerk, and from that arose, probably, the idea that it was no part of the law.

However this may be, we think it very well settled that the title of an act may be considered in ascertaining the general scope and purpose of the law, although it cannot be allowed to control the unambiguous provisions in the body of the bill. *United States* v. *Fisher*, 2 Cranch 380; Kent Com. 516; *Fowler et al.* v. *Danvers*, 8 Allen 80; *Robinson* v. *Tuttle*, 37 N. H. 248.

Regarding the design and purpose of the act as we do, we find no difficulty in reaching the conclusion that the provision in question was not intended to include past enlistments.

The very term *bounty* used in the law would ordinarily imply that the money so raised was to be used as an inducement to enter the service, and not as a gratuity or acknowledgment for services already rendered, and such was the view entertained by the court in *Fowler et al.* v. *Selectmen of Danvers*, 8 Allen 84.

It may be urged against these views that in the first class of persons

embraced in this section, towns and cities were empowered to pay bounties to persons mustered into the service before the passage of the act as well as after.

It will be observed, however, that this power extends back only to persons who had enlisted under the last call of the President, of March 14, 1864, and to but a short time before the passing of the act. Had the Legislature designed to confer the same power upon towns and cities by the provision in question it is reasonable to suppose it would have been explicitly stated as it was in the other case. The absence, there-fore, of any such statement affords strong ground for an inference that no such purpose was entertained by the law-makers, especially as in the other case so much care was taken to make clear the purpose to include previous enlistments under the same call.

It will be perceived also that if the term " enlisting " is construed to mean those who had already enlisted, as well as those who might after-wards enlist, there is nothing to limit its operation, and it must be held to include all who had before enlisted, whether under the last call or not.

But we think no such construction can be given, or was intended to be given, to the terms used. To give it that effect the present participle *enlisting* must be construed as equivalent to the term " had enlisted," and for this we can see no warrant. Instead of that, a construction which should limit the power to such citizens of the town or city as enlisted at the time of the payment of the bounty, or upon the faith of the offer of it, would be most in accordance with the ordinary significa-tion of the general scope and design of the law.

By the first provision, towns were empowered to pay bounties not ex-ceeding $300 to three years' men, and in that proportion for other terms of service ; while by the provision in question towns were empowered to pay any sums they might think expedient, to their own citizens, as bounty for enlisting. This power was given, doubtless, to encourage a better class of persons to enter the military service ; and as the power is unlimited as to the amount of bounty, it is not unreasonable to sup-pose that the Legislature intended to restrict its application to future en-listments ; in which way alone would enlistments be encouraged, it having been decided in this State that a power given to towns to pay money to encourage voluntary enlistments, does not authorize the towns to pay money to persons who have already enlisted. *Crowell* v. *Hopkin-ton,* 45 N. H. 9 ; *Huntress* v. *Stratham,* 46 N. H. 409 ; *Shackford* v. *Newington,* 46 N. H. 415.

So in *Fowler et al.* v. *Selectmen of Danvers,* 8 Allen 80, it was held that an act which confirmed and ratified the acts and doings of cities and towns in paying, or agreeing to pay, bounties and recruiting expenses for soldiers already furnished by them upon the requisition of the United States, and upon the call of the Governor, for the present war, should not be construed to legalize a vote of a town to pay money to persons who had already enlisted. There the terms of the act were broad enough to include past enlistments, but as the design and object of it was to make valid all votes and expenditures of towns in further-

ance of the great object of obtaining volunteers, and not to give bounties or gratuities to such as had already enlisted, the law was construed accordingly.

A somewhat similar doctrine was laid down in *Usher* v. *Colchester*, 33 Conn. 567.

We are brought then to the conclusion that the town of Stewartstown had no power to raise and appropriate money to pay for the past services of the plaintiff, and consequently that the selectmen cannot be required to pay the money voted.

In this case the plaintiff enlisted March 30th, 1865, and was discharged in August, 1865, and March 12th, 1867, the town voted to pay the additional sum of $150. The vote under which the petitioner claims was therefore more than one year and a half after his term of service had expired, and it is not alleged that his term of enlistment was induced by any offer of the town to pay more than the $300.

The vote of March, 1867, was then a mere gratuity and in no sense to be regarded as aiding in the raising of troops, and was not therefore within the spirit of the act in question. If the town have authority in this case to pay bounties, we see no limit to the authority in respect to the time of service.

The petitioner therefore is not entitled to the relief he seeks, and the petition must be dismissed.